UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

KORY T. O'BRIEN,

                                    Plaintiff,

v.

G. MURPHY, et al.,

                                    Defendants.

Case No.:  19CV1496 BAS (BGS)

**REPORT AND RECOMMENDATION TO GRANT DEFENDANTS' MOTION TO DISMISS**

[ECF 14]

        Defendants P. Covello, G. Murphy, J. Stewart, R. Martin, T. Ramos, and L. Eshelman have filed a Motion to Dismiss Plaintiff Kory T. O'Brien's Complaint brought under 42 U.S.C. § 1983.  (ECF 14.)  Plaintiff was an inmate at Richard J. Donovan Correctional Facility ("RJD") at the time[1] the events alleged in the Complaint occurred. (Compl. [ECF 1] at 1.[2])  Plaintiff claims Defendants have enacted a policy that discriminates against "working class" inmates in violation of the Equal Protection Clause

---

[1] Plaintiff has since been transferred to Valley State Prison. (ECF 17 (Notice of Change of Address).)

[2] The Court cites the CM/ECF electronic pagination throughout unless otherwise noted.

of the Fourteenth Amendment.  (*Id.* at 4-5.)  Defendants move to dismiss, arguing the policy Plaintiff challenges is rationally related to the legitimate penological goal of encouraging prisoners to work. (Def.'s Mot. to Dismiss [ECF 14] ("Mot.") at 3-4.)

This Report and Recommendation is submitted to United States District Judge Cynthia Bashant pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule 72.1(c) of the United States District Court for the Southern District of California.  For the reasons discussed below, **IT IS RECOMMENDED** that the Motion to Dismiss be **GRANTED**.

## I.    BACKGROUND

The following allegations are drawn from Plaintiff's Complaint.  (ECF 1.) The Complaint alleges Defendants have implemented a policy that denies Plaintiff attendance hours that accumulate to earn Rehabilitative Achievement Credits ("RAC") under Proposition 57.  (*Id.* at 4.)  Plaintiff explains that if an inmate completes 52 hours of attendance at approved rehabilitative programs, the inmate will receive a ten-day sentence reduction.  (*Id.*)  The Complaint also explains that inmates are allowed to take excused time off ("ETO") from work assignments to attend religious programs and that these programs can also qualify for attendance hours for RAC credit purposes.  (*Id.* at 5.)

Plaintiff alleges that the October 18, 2018 policy he challenges does not allow inmates to earn attendance hours for RAC credit purposes if the inmate uses ETO from a work assignment to attend the program.  (*Id.* at 4-6.)  Plaintiff does not allege he was not allowed to attend any religious program.  Rather, he alleges that he was allowed ETO to attend a religious program April 5-8, 2018 and attended another religious program on October 20, 2018,[3] but he did not receive attendance hours for RAC credit purposes for the programs based on this policy.  (*Id.* at 5-6.)

---

[3] Plaintiff's Complaint suggests the October 18, 2018 policy, signed by Defendant Eshelman and handed out by Defendant Martin, may have been precipitated by inmates voicing concerns about not receiving attendance hours for the April 2018 program as the October 20, 2018 program approached.  (*Id.* at 3, 6.)

Plaintiff alleges the policy discriminates against inmates that belong to the "working class." (*Id.* at 5.) However, he only describes the distinction as being between inmates with and without work conflicts. He alleges that if an inmate's work assignment does not conflict with the religious program and the inmate attends the program, that inmate gets attendance hours. (*Id.* at 5.) But, if an inmate's work assignment conflicts with the program and the inmate takes ETO from work to attend, like Plaintiff did for the April 5-8 program, that inmate does not get attendance hours. (*Id.*)

Additionally, Plaintiff alleges Defendants Martin, Stewart, Covello, Murphy, and Ramos all violated his rights by not finding in his favor through the administrative appeals process as he challenged the policy. (*Id.* at 6-7.)

## II.   FAILURE TO STATE A CLAIM

Defendants move to dismiss Plaintiff's equal protection claim based on failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, Defendants move to dismiss Plaintiff's civil damages claim based on qualified immunity and challenge Plaintiff naming numerous official-capacity defendants as redundant. (ECF 14 at 4-12.) Defendants additionally argue Plaintiff's claim for injunctive relief is moot based on his transfer to a different prison. (ECF 19 at 6.)

The Court first addresses the failure to state a claim, finding Plaintiff has not stated an equal protection claim. The Court then addresses Defendants' alternative arguments.

### A.   Legal Standards

#### 1.   Rule 12(b)(6)

"A dismissal under [R]ule 12(b)(6) 'may be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1093 (9th Cir. 2017) (quoting *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121-22 (9th Cir. 2008)). Under Rule 8(a)(2), the complaint need only provide a "short and plain statement of the claim showing that [the plaintiff] is entitled to relief." Although "the statement need only give the defendant[s] fair notice of what ... the claim is and the grounds upon which it rests," it

"must, at a minimum, plead 'enough facts to state a claim to relief that is plausible on its face.'" *Johnson*, 534 F.3d at 1122 (quoting *Erickson v. Pardus*, 551 U.S. 89, 127 (2007) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

The Court must view the factual allegations of the complaint "in the light most favorable to [the plaintiff], accepting all well-pleaded factual allegations as true, as well as any reasonable inferences drawn from them." *Johnson*, 534 F.3d at 1123 (citing *Broam v Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003)). Additionally, because Plaintiff "is an inmate . . . proceed[ing] pro se, his complaint 'must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (explaining that courts should "continue to construe *pro se* filings liberally when evaluating them under *Iqbal*."). Particularly in civil rights cases, the court must "construe the pleadings liberally and . . . afford the petitioner the benefit of any doubt." *Id.* (citing *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985)). "However, a liberal interpretation of a *pro se* civil rights complaint may not supply essential elements of the claim that were not initially pled. Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss." *Litmon v. Harris*, 768 F.3d 1237, 1241 (9th Cir. 2014) (citing *Pena v Gardner*, 976 F.2d 469, 471 (9th Cir 1992)).

### 2. Section 1983

Plaintiff brings his equal protection claim under 42 U.S.C. § 1983. "Section 1983 is a 'vehicle by which plaintiffs can bring federal constitutional and statutory challenges to actions by state and local officials.'" *Naffe v. Frey*, 789 F.3d 1030, 1035 (9th Cir. 2015) (quoting *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006)). "To state a claim under § 1983, a plaintiff [1] must allege the violation of a right secured by the Constitution and laws of the United States, and [2] must show that the alleged deprivation

was committed by a person acting under color of state law." *Id.* at 1035-36 (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)).  "Dismissal of a § 1983 claim following a Rule 12(b)(6) motion is proper if the complaint is devoid of factual allegations that give rise to a plausible inference of either element." *Id.* at 1036 (citing *DeGrassi v. City of Glendora*, 207 F.3d 636, 647 (9th Cir. 2000), *Price v. Hawaii*, 939 F.2d 702, 707-09 (9th Cir. 1991), and *Iqbal*, 556 U.S. at 678).

### 3.    Equal Protection

Plaintiff claims Defendants have enacted a policy that discriminates against "working class" inmates in violation of the Equal Protection Clause of the Fourteenth Amendment.  (Compl. at 4-5; Pl.'s Opp'n to Motion to Dismiss [ECF 18] ("Opp'n") at 2, 5.)

"The Equal Protection Clause requires the State to treat all similarly situated people equally." *Hartmann v. Cal. Dep't of Corrs. and Rehab.*, 707 F.3d 1114, 1123 (9th Cir. 2013) (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)).  "This does not mean, however, that all prisoners must receive identical treatment and resources." *Id.* (citations omitted).  Numerous district court decisions summarize the two possible avenues for an equal protection as "established by showing that defendants intentionally discriminated against a plaintiff based on his membership in a protected class or that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate purpose." *Arellano v. Hodge*, Case No. 14-cv-590 JLS (JLB), 2016 WL 4709064, at *6 (S.D. Cal. Sept. 9, 2016) (citing *Comm. Concerning Community Improvement v. City of Modesto*, 583 F.3d 690 (9th Cir. 2009), *Serrano v Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003), *Engquist v. Oregon Dep't of Agric.*, 553 U.S. 591, 601-02 (2008)); *see also e.g. Saddiq v. Trinity Servs. Group*, 198 F. Supp. 3d 1051, 1055 (D. Ariz. 2016) (same) (citations omitted); *Hamilton v. White*, No. ED CV 09-2213-PA(VBK), 2010 WL 5348759, *8 (C.D. Cal. Dec. 17, 2010) (same) (citations omitted); *Edwards v. Shakiba*, Case No. 18-cv-0179 MMA (JMA), 2018 WL 3832846, *3 (S.D. Cal Aug. 13, 2018).  As discussed more fully below, because Plaintiff's Complaint lacks any allegations

he is a member of a suspect class, his only route to establish his equal protection is the second option, often referred to as a "class of one." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (Discussing reliance on "class of one" theory when plaintiff is not in a protected class). To state a claim under this theory, a plaintiff must allege they have "been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Id.*

The level of scrutiny that applies to equal protection claims depends on whether the claim alleges discrimination against a suspect class or impinges on a fundamental right. Racial classifications are subject to strict scrutiny even in the prison context. *Johnson v. California*, 543 U.S. 499, 509-510 (2005) (Finding strict scrutiny rather than the lower standard set out in *Turner v. Safley*, 482 U.S. 78, 89 (1987) applied to an equal protection claim challenging express racial classifications used by prisons). Prison restrictions burdening fundamental rights are subject to a more deferential standard, a reasonable-relationship test, articulated in *Turner v. Safley*.[4] *Id.* at 510 (summarizing cases) (citations omitted). "When a state policy does not adversely affect a suspect class or impinge upon a fundamental right, all that is constitutionally required of the state's program is that it be rationally related to a legitimate state objective." *Coakley v. Murphy*, 884 F.2d 1218, 1121-22 (9th Cir. 1989); *Webber v. Crabtree*, 158 F.3d 460, 461 (9th Cir. 1998); *Veenstra v.*

---

[4] *Turner*'s test has been applied to prison restrictions burdening fundamental rights like First Amendment challenges based on free association, access to courts, receipt of publications, and limits on access to religious activities as well as some due process challenges such as involuntary medication of prisoners and restrictions on the right to marry. *Johnson*, 543 U.S. at 510 (summarizing cases addressing each). These types of claims would generally be subject to a higher level of scrutiny outside the prison context, but the Supreme Court reasoned that "[s]ubjecting day-to-day judgments of prison officials to an inflexible strict scrutiny analysis would seriously hamper their ability to anticipate security problems and to adopt innovative solutions to the intractable problems of prison administration." *Turner*, 482 U.S. at 89.

*Idaho State Bd. of Corr.*, No. 17-35952, 785 Fed. Appx. 390, 391 (9th Cir. Nov. 19, 2019). As discussed below, this is the standard applicable to Plaintiff's claim.

## B.    Parties' Positions

Defendants argue Plaintiff's claim must be dismissed because the challenged policy is rationally related to the legitimate penological interest of encouraging inmates to work. (ECF 14 at 4, 6.)  Defendants explain that inmates are allowed ETO from work to attend religious functions to accommodate inmates' First Amendment rights to attend religious services.  (*Id.* at 7 (citing Cal. Code. of Regs. tit. 15, § 3045.2).)  However, prisoners in California are statutorily mandated to work and the regulations concerning earning RAC credits also require credit earning be consistent with the inmate's work assignment.  (*Id.* at 6 (citing Cal. Penal Code § 2700 (able-bodied prisoners must work); Cal. Code Regs. tit. 15, § 3040(a)(same), and *Burleson v. State of Cal.*, 83 F.3d 311, 313 (9th Cir. 1996) (CDCR can compel inmates to work); Cal. Code Regs. tit. 15, § 3043.4 (RAC credit earning must be consistent with work assignment).)  Defendants argue that allowing inmates ETO to attend religious programs, but not allowing them the additional benefit of earning attendance hours for RAC credits when they use ETO to avoid work, furthers the state's interest in encouraging inmates to work while still balancing the First Amendment rights of inmates to attend religious programs.

Plaintiff argues the policy is arbitrary and irrational.  (ECF 18 at 8-9.)  Plaintiff challenges Defendants' reliance on statutes, cases, and regulations requiring inmates to work.  (*Id.* at 7.)   He essentially argues that because he is following the regulation concerning the use of ETO to participate in religious programs he cannot be denied the additional benefit of attendance hours for RAC credit purposes. (*Id.* at 8 (citing § 3045.2).) He appears to argue that by using ETO to attend, he has complied with, or need not comply with, the requirement that RAC credit earning be compliant with work assignments.  (*Id.* at 8-9 (citing § 3042.3(a)).)

///

///

19CV1496 BAS (BGS)

C.    **Analysis**

1.    **No Suspect Class or Fundamental Right at Issue**

Plaintiff's claim is subject to rational basis review because Plaintiff has not alleged he is a member of a suspect class or that any fundamental right is burdened by Defendants' policy.   Although his Complaint involves religious programs, the Complaint does not allege he has not been able to attend or otherwise participate in any religious programs or that any religious group is being favored.   He alleges the opposite.   He has been afforded ETO from work to attend multiple religious programs under the policy he challenges. Plaintiff has not alleged a violation of a fundamental right in his Complaint and he has not identified any fundamental right that is burdened in his Opposition.   The Complaint and Opposition also lacks any allegations suggesting Plaintiff is a member of a suspect class. Prisoners are not a suspect class. *Webber*, 158 F.3d at 461; *Glauner v. Miller*, 184 F.3d 1053 1054 (9th Cir. 1999).

2.    **Legitimate State Objective**

When inmates "are not members of a suspect class" and do not allege violation of a fundamental right, "prison officials must show only that the [policy] bears a rational relation to a legitimate governmental objective."  *Webber*, 158 F.3d at 461; *Coakley*, 884 F.2d at 1121-22 (Finding equal protection claim failed because state had legitimate interest in insuring inmate on work release understood his obligations and the policy requiring inmate to sign work release agreement was rationally related to that end); *Veenstra*, 785 Fed. Appx. at 391 (Finding equal protection claim based on inmates in one facility having access to their medical records and inmates in another not having the same access was "subject to rational basis review; that is, a policy is constitutional if it is rationally related to a legitimate state interest.").[5]

---

[5] Plaintiff seeks application of the *Turner* standard to his claim.  However, as reflected in the cases cited here that do not apply it and other appellate courts that have explicitly addressed the distinction, "*Turner* does not govern equal protection claims brought by

8

19CV1496 BAS (BGS)

Prisons have a legitimate interest in encouraging inmates to work. *Mayweathers v. Newland*, 258 F.3d 930, 938 (9th Cir. 2001) ("The government has a legitimate interest in making sure inmates attend their work . . . assignments."); *see also O'Lone v. Estate of Shabazz*, 482 U.S. 342, 351 (1987) (recognizing that teaching inmates to show up on time and put in the work hours they are supposed to as legitimate goals).[6]  Plaintiff does cite any cases to the contrary or persuasively argue that prisons do not have a legitimate interest in encouraging inmates to work.  This is a legitimate state objective.

### 3.    Rationally Related to State Objective

The policy is also rationally related to this objective.  As alleged in the Complaint, the policy denies attendance hours for RAC purposes if the inmate is taking time off from work to attend the program.  In this respect, it encourages inmates to work by denying an additional incentive, RAC credits, to take time off from work.  This is consistent with the regulation governing inmates' ability to earn RAC credits which explicitly indicate

---

prisoners that do not involve suspect groups or fundamental rights." *Spavone v. New York Dep't of Corr. Servs.*, 719 F.3d 127, 136-37 (2nd Cir. 2013); *Hatch v. Sharp*, 919 F.2d 1266, 1269 (7th Cir. 1990) (Finding "*Turner* analysis is inapplicable" when no fundamental constitutional right or suspect class is involved).  In *Shakur v. Schiro*, a free exercise case, the Ninth Circuit also distinguished the two standards in finding a district court "applied the wrong standard of review substituting mere rational basis review for the four-part balancing test required by *Turner*" because the court mistakenly focused the inmate's status as a prisoner, rather than as a Muslim. 514 F.3d 878, 891 (9th Cir. 2008).  Here, Plaintiff pleads no status other than a prisoner, or possibly a working prisoner.  Accordingly, the rational basis standard applies.  However, the claim fails under *Turner* as well.  Given much of the Court's analysis below also goes to *Turner* factors, the Court briefly summarizes how the claim also fails under *Turner*'s four-factor test.  (*See* I.C.4.)
[6] The Court does not rely on Defendants' citation of *Bowman v. Dep't of Corrs.*, No 95-35802, 1997 WL 66571, at *2 (9th Cir. Feb. 11, 1997) in their Reply (ECF 19 at 3) because it is an unpublished decision from 1997.  *See* Fed. R. App. Proc. 32.1 ("A court may not prohibit or restrict the citation of federal judicial opinions . . . that have been (i) designated as "unpublished" . . . and (ii) issued on or after *January 1, 2007*.") (emphasis added); Ninth Circuit Rule 36-3 ("Unpublished dispositions and orders of this court issued *on or after January 1, 2007* may be cited to the courts of this circuit in accordance with FRAP 32.1") (emphasis added).

9

19CV1496 BAS (BGS)

"participation in such activities shall be consistent with his or her custodial classification, *work group assignment*, privilege group, and other safety and security measures." Cal. Code Regs. tit. 15, § 3043.4 (emphasis added). The policy of denying attendance hours for RAC credits when the inmate takes time off from work to attend the programs bears a rational relation to the prison's legitimate objective of encouraging inmates to work.

Plaintiff seems to argue that because he has complied with § 3045.2 in taking ETO from work to attend a program, he cannot be denied the attendance hours for RAC credits purposes. The Court also recognizes Plaintiff is frustrated that he does not get the additional benefit of attendance hours for RAC credits if he takes time off from work to attend a program that might otherwise qualify if he were not working at the scheduled time. Plaintiff characterizes it as irrational and arbitrary, but it is not. The situation presented here only arises because an existing state regulations allow inmates to use ETO to attend religious programs.[7] However, the state's willingness to allow an inmate to take time off from work to participate in a religious program to avoid potentially running afoul of the First Amendment does not mean the state is also required to allow inmates the additional benefit of earning RAC credits for that program. *See Veenstra*, 785 Fed. Appx. at 391 (citing *Walker v. Beard*, 789 F.3d 1125, 1136, 1138 (9th Cir. 2015) ("A state may have a compelling interest in complying with the Constitution, and a legitimate interest in avoiding possible legal liability."). The provision of one incentive to take time off from work does not require the prison to offer an additional one.

---

[7] California Regulations dictate "authorized uses for ETO" and only allow approval for the reasons listed absent approval from the Secretary of CDCR. Cal. Code. Regs. tit. 15, § 3045.2(d) ("Excused time off may be approved by work/training supervisors only for the below stated reasons."). It does not list rehabilitation programs, but does specifically include "[a]ttendance at approved religious services or approved religious functions. For routine religious services, the use of ETO shall be limited to instances where it is unduly burdensome to change the conflicting work/education assignment." § 3045.2.

The Court is also persuaded by Defendants' argument that the policy serves an additional legitimate objective, avoiding unnecessary favoritism of religious inmates over non-religious inmates. *See O'Lone v. Shabazz*, 482 U.S. 342, 353 (1987) (Recognizing, in evaluating *Turner*'s fourth factor, "that special arrangements for one group would create problems as other inmates see that a certain segment is escaping rigorous work detail and perceive favoritism.")  Although there may already be some minimal favoritism in the allowance for inmates to take time off to attend religious programs, adding receipt of attendance hours for purposes of RAC credits adds a significant additional advantage unrelated to the free exercise of religion.  Essentially, religious inmates would be able to use ETO to earn attendance hours for RAC credits that non-religious inmates would be denied because ETO is available for religious programs, but not for other rehabilitation programs.  In this respect, Plaintiff's suggested alternative to the policy—that he and other inmates receive attendance hours for RAC credits even when they take time off from work to attend—is not a viable one.

This is not to say the problem should be solved by denying ETO to everyone, an alternative way to achieve the prison's goal of encouraging inmates to work without favoring any group in awarding RAC credits.  This allowance for use of ETO to attend religious programs is clearly targeted to accommodating inmates' participation in religious activities, itself a compelling interest. *See Veenstra*, 785 Fed. Appx. at 391 (citing *Walker*, 789 F.3d at 1138) ("A state may have a compelling interest in complying with the Constitution, and a legitimate interest in avoiding possible legal liability.").

In support of the policy, Defendants also argue it encourages inmates to work while not precluding them from earning RAC credits during non-work hours.  The Court agrees and notes that as pled in the Complaint, the group Plaintiff claims to be a member of for equal protection purposes is essentially inmates whose work assignments have a scheduling conflict with RAC programs.  Plaintiff claims he is similarly situated to, but being treated differently than, inmates that "for whatever reason do[] not have an assignment, that the times do not conflict with the approved RAC program."  (ECF 1 at 5.)  Regardless of the

unaddressed challenges in defining a group this way for equal protection purposes,[8] it exemplifies Defendants' point that Plaintiff and others like him have other avenues to earn RAC credits under the policy.  Even in a case where a fundamental right was at issue (participation in certain religious programs) the Supreme Court found inmates' ability to attend programs at times that did not conflict with their work assignments was a factor in upholding the prison's policy as reasonable. *See O'Lone*, 482 U.S. at 351-52 (Addressing *Turner*'s third factor and concluding "[w]e find this ability on the part of [inmates] to participate in other religious observances of their faith supports the conclusion that the restrictions at issue here were reasonable.") Here too, although there is no fundamental right involved, Plaintiff is free to earn attendance hours for RAC credits for programs that do not conflict with his work assignments.  Surely, if the Supreme Court finds the option of attending religious services during non-work times persuasive in finding a prison policy reasonable, it is similarly reasonable here when there is no fundamental right at issue.

The Court concludes that Defendants' legitimate interest in encouraging inmates to work and avoiding favoritism of one group over another is rationally related to Defendants' policy that inmates may not earn attendance hours for RAC credit purposes if they take time off from work to attend.

### 4. *Turner* Analysis

As noted above, (*see* footnotes 4 and 5 above), the outcome would be the same if the Court applied the *Turner* standard Plaintiff asks the Court to apply for the reasons discussed

---

[8] Defendants did not challenge this grouping or class in moving to dismiss.  (ECF 14 at 6 ("Assuming, without conceding that the subject policy is discriminatory against 'working class' inmates.").  However, the court notes that the classification or group Plaintiff alleges matters because if the groups identified as being treated differently are not similarly situated, there can be no equal protection violation.  Treating unlike groups differently does not violate the equal protection clause. *See Wright v. Incline Vill. Gen. Improvement Dist.*, 665 F.3d 1128, 1140 (9th Cir. 2011); *Thornton v City of St. Helens*, 425 F.3d 1158, 1168 (9th Cir. 2005).

above.  To summarize, as to the first factor, there a "valid rational connection" between the policy of denying attendance hours for RAC credit purposes when an inmate takes time off from work and the prison's legitimate interest in encouraging inmates to work.  *Turner*, 482 U.S. at 89.  It is certainly not "so remote as to render the policy arbitrary or irrational." *Id.*  As to the second factor, as discussed above, "there are alternative means" that remain open to Plaintiff to earn RAC credits.  *Id.* at 90 (On this factor the court cautioned that "[w]here other avenues remain available . . . courts should be particularly conscious of the 'measure of judicial deference owed to corrections officials.'"); *see also O'Lone*, 482 U.S. at 351-52 (addressing *Turner*'s second factor and finding access to other religious activities when they were not working favored the policy).  Plaintiff may earn credits by attending programs that are not during work hours.

The third and fourth factors also weigh against Plaintiff's claim.  As discussed above, allowing inmates to earn attendance hours for RAC credits through the use of ETO as Plaintiff demands, would result in favoritism of religious inmates over non-religious inmates and encourage inmates to take advantage of ETO solely to earn RAC credits. *Turner*, 482 U.S. at 90 ("A third consideration is the impact of the asserted constitutional right will have on guards and other inmates, and on the allocation of prisoner resources generally" and fourth consideration is the "the impact that accommodation of [the] asserted right would have on other inmates, on prison personnel, and on allocation of prison resources generally).  Although, Plaintiff may be correct that the institution has already accounted for his attendance at a religious program from a security standpoint if he is using ETO to attend, the Court cannot ignore that the opportunity to earn RAC credits instead of working could result in inmates exploiting the opportunity on a level that could impact personnel and prison resources.  Additionally, as discussed above, the adoption of Plaintiff's approach would result in favoritism of religious inmates over non-religious inmates, an indication that "there are no 'obvious, easy alternatives to the policy adopted

by [Defendants]." *O'Lone*, 482 U.S. at 353 (quoting *Turner*, 482 U.S. at 93 as to fourth factor).[9]

Accordingly, the Court recommends **GRANTING** Defendants' Motion to Dismiss because Plaintiff has failed to sufficiently plead an equal protection claim.

## III.   ALTERNATIVE ARGUMENTS

Given the Court's conclusion that the Complaint should be dismissed for failure to state a claim, the Court need not reach Defendants' alternative arguments.  However, the Court briefly addresses two additional arguments below that provide additional reasons to dismiss Plaintiff's Complaint.

### A.   Qualified Immunity

If the case were not dismissed for failure to state a claim, as recommended above, Defendants seek dismissal of Plaintiff's civil damages claim based on qualified immunity. (ECF 14 at 9-11.)

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Because it is an immunity from suit, immunity questions should be resolved at the earliest possible stage of a case, ideally even before discovery if claims are insubstantial. *Id.* at 231-32 (citations omitted).  There are two primary inquiries or prongs in evaluating qualified immunity: (1) "whether the plaintiff has alleged a deprivation of a constitutional right at all" and (2) "whether the right at issue was 'clearly established' at the time of defendants alleged misconduct."  *Id.* at 232 (citations omitted).  "Qualified

---

[9] "[P]rison officials do not have to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint." *Turner*, 482 U.S. at 90-91.

immunity is applicable unless the official's conduct violated a clearly established constitutional right. *Id.* (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). Here, Plaintiff has not alleged deprivation of a constitutional right and it is certainly not clearly established.

As discussed at length above, the Court finds Plaintiff has failed to plead an equal protection claim. Accordingly, for the reasons set forth above, the Court finds Plaintiff has not alleged deprivation of a constitutional right. When there is no violation, "there is no necessity for further inquiries concerning qualified immunity." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). In this respect, the Court need not reach the second prong. However, even assuming the allegations did make out the deprivation of a constitutional right it is certainly not clearly established. The Court recognizes there need not be "a case with identical or 'materially similar' facts" for the law to be clearly established. *Serrano*, 345 F.3d at 1077 (citing *Hope v. Pelzer*, 536 U.S. 730, 739-41 (2002)). However, "[a]n officer cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in his shoes would have understood that he was violating it, meaning that existing precedent . . . placed the statutory or constitutional question beyond debate." *City and Cty. of S.F. v Sheehan*, 575 U.S. 600, 135 S. Ct. 1765, 1774 (2015).

As Defendants explain, they have implemented this policy based on attempting to comply with the statutes and regulations described above that require inmates that are able-bodied to work, allow ETO for religious programs to accommodate First Amendment concerns, and require RAC credits be obtained in conformance with inmate work assignments. (ECF 14 at 10-11.) Plaintiff has also not identified any authority that would have alerted Defendants their attempt to balance these regulations through this policy was unconstitutional. Given the complete absence of any case law that would suggest the policy is unconstitutional, the Court agrees that Defendants could have reasonably believed they were acting within constitutional boundaries in denying inmates RAC credits for attendance at religious programs when they used ETO from work to attend. Again, the

Court must note this policy in no way targets religious programs or prevents inmates from participating in religious programs, at least based on the allegations of the Complaint. Rather, the policy only impacts religious programs because those are the only rehabilitation programs inmates are allowed to use ETO to attend. Additionally, as discussed above, the policy advances legitimate interests in encouraging inmates to work and avoiding favoritism of religious inmates in earning RAC credits while still leaving inmates opportunities to earn RAC credits for programs during non-work hours. Given the foregoing, the constitutional question is certainly not beyond debate. Accordingly, even if the Court were to find Plaintiff had stated an equal protection claim, Defendants are entitled to qualified immunity as to civil damages.

## B.    Injunctive Relief Moot

After Defendants filed their Motion to Dismiss, Plaintiff was transferred to Valley State Prison in Chowchilla, California. In their Reply, Defendants argue Plaintiff's claim for injunctive relief is now moot. (ECF 19 at 6 (citing *Dilley v. Gunn*, 64 F.3d 1365, 1368 (9th Cir. 1995)).) There is no dispute that Plaintiff has been transferred. He filed a notice with the Court indicating he had been transferred. (ECF 17.) Additionally, because he was transferred before he filed his Opposition, his new location is reflected multiple times on that filing. (ECF 18 at 1, 5, 17.)

"It is true that when a prisoner is moved from a prison, his action will usually become moot as to conditions at that particular facility." *Nelson v. Heiss*, 271 F.3d 891, 897 (9th Cir. 2001); *see also Dilley*, 64 F.3d at 1368 (Finding case for injunctive relief moot based on the Plaintiff's transfer to a different California prison). Plaintiff's Complaint only contains allegations regarding the policy at RJD and his claim is only asserted against Defendants at RJD. (ECF 1 at 2 (identifying Defendant Eshelman, a Case Records Manager at RJD, as the Defendant that signed the policy); 2-3 (identifying other Defendants involved in denial of his grievances up to the warden). In this respect, Plaintiff's claim appears to be limited to RJD. Accordingly, to the extent the claim is not dismissed for failure to state a claim, as recommended, the Court agrees it would be moot

1  as to injunctive relief. *See O'Brien v. Garcia*, Case No. 19-cv-1113 JAH (MDD), 2020

2  WL 2735196, at *5 (S.D. Cal. May 26, 2020) (Finding same Plaintiff's claims for

3  injunctive relief in a different action were moot based on his transfer from RJD to Valley

4  State Prison).

5        To summarize, the Court finds Plaintiff's equal protection claim should be dismissed

6  for failure to state a claim. (*See* I.C.) In the alternative, Defendants are entitled to qualified

7  immunity as to civil damages and the claim for injunctive relief is moot based on Plaintiff's

8  transfer. Given the foregoing, the Court does not reach Defendants' additional arguments

9  to dismiss Defendants Covello, Murphy, Stewart, Martin, and Ramos for lack of any

10  involvement with the policy other than denying grievances related to it, (ECF 14 at 7-8),

11  and that the injunctive relief claim, if it survived, should only proceed as to Defendant

12  Eschelman in his official capacity. (*Id.* at 11-12.)

13  **IV.  LEAVE TO AMEND**

14        Under Federal Rule of Civil Procedure 15(a)(2), leave to amend shall be freely

15  given when justice so requires. "In deciding whether justice requires granting leave to

16  amend, factors to be considered include the presence or absence of undue delay, bad

17  faith, dilatory motive, repeated failure to cure deficiencies by previous amendments,

18  undue prejudice to the opposing party and futility of the proposed amendment." *Moore v.*

19  *Kayport Package Express, Inc.*, 885 F.2d 531, 538 (9th Cir. 1989) (citing *Foman v.*

20  *Davis*, 371 U.S. 178, 182 (1962) and *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186

21  (9th Cir. 1987)). However, "[f]utility of amendment can, by itself, justify the denial of a

22  motion for leave to amend." *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995).

23        Neither party addresses these factors, however, the Court can find, based on the

24  record in this case there has been no undue delay, bad faith, dilatory motive, or any

25  attempts to amend. The Complaint considered here is Plaintiff's first. Additionally, any

26  prejudice to Defendants in having to respond to an amended pleading would not be

27  undue. As to futility, it appears highly unlikely that Plaintiff could successfully amend to

28  state an equal protection claim because, as discussed at length above, the policy at issue

is rationally related to a legitimate state objective and that conclusion is unlikely to be altered based on an amendment unless Plaintiff is able to assert some new information about the policy that alters the analysis drastically. Additionally, as discussed above, even if Plaintiff could assert new allegations to state a claim, it is likely that Defendants will still be entitled to qualified immunity and the injunctive relief will be moot based on Plaintiff's transfer. However, given the liberal policy favoring amendment, Plaintiff's status as a pro se prisoner, and all other factors weighing in favor of amendment, most significantly that Plaintiff has not had prior opportunities to amend his Complaint, the Court recommends dismissal with leave to amend.

## V.    CONCLUSION

For the reasons outlined above, **IT IS RECOMMENDED** that the District Court issue an Order: (1) Approving and Adopting this Report and Recommendation; (2) **GRANTING** Defendants' Motion to Dismiss. (ECF No. 14.)

**IT IS HEREBY ORDERED** that any written objections to this Report must be filed with the Court and served on all parties no later than **August 14, 2020**. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objection shall be filed with the Court and served on all parties no later than **August 21, 2020**. The parties are advised that the failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998).

**IT IS SO ORDERED.**

Dated:  July 24, 2020

Hon. Bernard G. Skomal
United States Magistrate Judge